UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
            :
**TONY SPATES**,            :
            :
         Plaintiff,      :  **MEMORANDUM DECISION AND**
            :  **ORDER**
  – against –      :
            :  24-CV-4548 (AMD) (JRC)
            :
**STEPHEN BENJAMIN, FIRST SERVICE**  :
**RESIDNETIAL/PLANNED COMPANIES,**
**ABLE SERVICES, CROWN ENERGY**  :
**SERVICE, JAMES HART, AND THE**
**DERMOT COMPANY, INC.**,      :
            :
         Defendants.
------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

      Before the Court are the defendants' motions to dismiss the *pro se* plaintiff's employment discrimination and retaliation claims. For the following reasons, the defendants' motions are granted.

## BACKGROUND

      The plaintiff, a 57-year-old Black man, worked as a porter "for almost ten years" at 316 Bergen Street, an apartment complex in Brooklyn, where he was responsible for cleaning and maintaining the building. (ECF No. 2 at 8–9.)

      Richard Gavin[1] slipped and fell on the sidewalk outside 316 Bergen, and sued the building in 2019. (*Id.* at 8.) A "manager" from First Service Residential, 316 Bergen's property management company, asked the plaintiff to testify because he was outside shoveling snow when

---

[1] The plaintiff identifies this man as Richard "Garvin" and "Garvey" (ECF No. 1 at 8), but the defendants say the only lawsuit matching the plaintiff's description was filed by Richard Gavin. (ECF No. 32 at 8 n.1.)

Gavin fell. (*Id.*)² The plaintiff testified, although he was "apprehensive about testifying because [he] didn't want to say anything that would put [his] job in jeopardy," a concern that he made clear. (*Id.*)

In 2022, Dermot Company, Inc., purchased 316 Bergen and hired Planned Building Services to oversee cleaning for the building. (*Id.*) In November of that year, Planned Building Services gave the plaintiff's coworkers "new uniforms and brand new tags and badges," but not the plaintiff. (*Id.*) Planned Building Services stopped fulfilling the plaintiff's supplies orders and fired the only other porter, who was also Black. (*Id.*)³ The plaintiff alleges that the "building ha[d] always required two porters," and that he was then "responsible for maintaining the upkeep of the entire building." (*Id.*)

Over the next three months, the new management "push[ed] back" on the plaintiff's efforts to order supplies and to get a new uniform. (*Id.*) Management also hired "new porters" who told the plaintiff that he "was making too much money for this position" and "had a problem with [his] salary and age." (*Id.* at 9.)

The defendants fired the plaintiff on February 28, 2023. (*Id.*)⁴ The plaintiff alleges that he was "terminated because [he] made too much money," but that his "coworkers . . . who

---

² The plaintiff says that First Service Residential was the property manager in 2019; the defendants explain that First Service Residential is the parent company of Planned Building Services, Inc., and that the plaintiff "incorrectly pled" these two as a single entity. (ECF No. 32 at 7–8.) For purposes of this decision, the Court refers to this defendant as Planned Building Services. The defendants also assert that Planned Building Services was retained "to provide janitorial services" in 2022, and that they do not know who employed the plaintiff before that date. (*Id.* at 8 n.1.)

³ Around this time, Planned Building Services hired a superintendent and his "countrymen" who "spoke the same language" and began "isolating" the plaintiff. (ECF No. 2 at 8.)

⁴ Although the complaint states that the plaintiff was terminated on February 24, 2023, (*Id.* at 9), the plaintiff's EEOC charge, which the Dermot Defendants attached to their motion to dismiss, states that the termination date was February 28, 2023, (ECF No. 33-2 (Ex. B, EEOC Charge)). Because the complaint incorporates the EEOC charge by reference, the Court relies on that document. *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013); *Zoulas v. New York City Dep't of Educ.*, 400 F. Supp. 3d

2

started at [316] Bergen made the same salary . . . [and] were not affected." (*Id.*) The plaintiff asserts that the defendants discriminated and retaliated against him on the basis of his age and race. (*Id.*)

On February 6, 2024, the plaintiff filed a discrimination charge against First Service Residential, Dermot, and Planned Building Services with the Equal Employment Opportunity Commission ("EEOC"). (ECF No. 33-2 (Ex. B, EEOC Charge).) On March 5, 2024, the EEOC closed the plaintiff's case on the grounds that the "charge was not filed within the time limits under the law" and gave the plaintiff notice of his right to sue in federal court. (ECF No. 2 at 6.)

On June 3, 2024, the plaintiff filed this complaint against Planned Building Services, Dermot and its CEO Stephen Benjamin (the "Dermot Defendants"), Royale Company and its partner James Hart (the "Royale Defendants"),[5] Crown Energy Services, and Able Services.[6] (ECF No. 2.) He alleges race and age discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967 ("ADEA"). (*Id.* at 2, 5.) In November 2024, the Royale Defendants and Dermot Defendants moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF Nos. 27, 31.)[7]

**LEGAL STANDARD**

To survive a Rule 12(b)(6) challenge, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

---

25, 48 (S.D.N.Y. 2019) ("[W]hen any allegations contradict the evidence contained in the documents relied upon by a plaintiff, the documents control." (citation omitted)).

[5] While the complaint names James Hart and "Crown Royal" as a single defendant, counsel for Mr. Hart explains that this is presumably a reference to Royale Company, who employed the plaintiff until 2018. (ECF No. 27-2 at 6.)

[6] Crown Energy Services and Able Services have not appeared in the action.

[7] The plaintiff has not responded to these motions, although the Court has *sua sponte* extended his time to respond. (*See* ECF Orders dated Dec. 16, 2024, Jan. 16, 2025 and Mar. 11, 2025.)

3

(2007). "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although a plaintiff need not set forth "detailed factual allegations," a complaint that includes only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. When faced with a Rule 12(b)(6) motion, the Court "accept[s] all factual allegations in the complaint as true and draw[s] all inferences in the plaintiff's favor." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (citation omitted).

The Court "liberally construe[s]" *pro se* filings and evaluates them by "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also McCray v. Lee*, 963 F.3d 110, 116 (2d Cir. 2020). The Court reads the plaintiff's claims "to raise the strongest arguments that they suggest." *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 387 (2d Cir. 2015) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)).

## DISCUSSION

### I. Exhaustion of Administrative Remedies

"Prior to bringing an action in the district court under Title VII . . . or the ADEA," a plaintiff must "exhaust his claims in accordance with the regulations promulgated by the" EEOC. *Miller v. Kempthorne*, 357 F. App'x 384, 385 (2d Cir. 2009) (citations omitted). In New York, a plaintiff must "file a charge with the EEOC within . . . 300 days 'after the alleged unlawful employment practice occurred.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 79 (2d Cir. 2015) (quoting 42 U.S.C. § 2000e–5(e)(1)); *see also Rasko v. New York City Admin. for Children's Servs.*, 734 F. App'x 52, 54 (2d Cir. 2018) ("Under Title VII, a plaintiff in New York must file a complaint with the EEOC within 300 days of a discriminatory act."); *Kassner v. 2nd*

4

*Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007) ("A plaintiff seeking to recover under the ADEA must file a discrimination charge with a state agency within 300 days of the occurrence of the allegedly unlawful employment practice."). "Exhaustion of administrative remedies through the EEOC is 'an essential element' of the Title VII . . . statutory scheme[] and, as such, a precondition to bringing such claims in federal court." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (citations omitted); *see also Zinnamon v. NYC Dep't of Soc. Servs.*, No. 08-CV-5266, 2010 WL 3325264, at *4 (E.D.N.Y. Aug. 18, 2010) ("This statutory requirement is strictly enforced, even against *pro se* litigants." (collecting cases)).

The plaintiff filed his EEOC charge on February 6, 2024. (ECF No. 33-2 (Ex. B, EEOC Charge).) However, the most recent conduct at issue — the plaintiff's termination on February 28, 2023 — took place more than 300 days before he filed the charge. (*Id.*) This means that the plaintiff has not exhausted his administrative remedies for the defendants named in the EEOC charge, or for those that he named for the first time in the complaint. *Batiste v. City Univ. of N.Y.*, No. 16-CV-3358, 2017 WL 2912525, at *3 (S.D.N.Y. July 7, 2017) ("In general, a plaintiff may not bring a civil suit under Title VII or the ADEA against a party not named as a respondent in the EEOC charge.").[8] Accordingly, the plaintiff's Title VII and ADEA claims are time-barred.

---

[8] Although the Second Circuit recognizes an "identity of interest" exception that allows a *pro se* plaintiff to bring Title VII and ADEA claims against a defendant who was not named in the original EEOC charge, *Jackson v. New York City Transit*, No. 05-CV-1763, 2005 WL 2664527, at *2 (E.D.N.Y. Oct. 19, 2005), *aff'd*, 348 F. App'x 666 (2d Cir. 2009), that exception is inapplicable where, as here, the underlying conduct attributed to those defendants would still be time-barred.

## II. Failure to State a Claim

Even if the plaintiff had exhausted his administrative remedies, the complaint fails to state a claim against any of the defendants.

### a. Discrimination Claims

Under Title VII and the ADEA, a plaintiff alleging discrimination on the basis of race or age must establish that "(1) [he] is a member of a protected class; (2) [he] is qualified for [his] position; (3) [he] suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Vega*, 801 F.3d at 83 (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000)); *see also Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010). Although a plaintiff has only a "*minimal* burden of showing facts suggesting an inference of discriminatory motivation," *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015), his allegations must still "nudge his claims across the line from conceivable to plausible to proceed." *Vega*, 801 F.3d at 84 (cleaned up) (quoting *Iqbal*, 556 U.S. at 680); *see also Delgado v. Triborough Bridge & Tunnel Auth.*, 485 F. Supp. 2d 453, 463 (S.D.N.Y. 2007) ("A complaint consisting only of assertions, setting forth no specific facts upon which a court could find a plausible violation of Title VII, must be dismissed for failure to state a claim under Rule 12(b)(6)."); *Mansaray v. Kraus Sec. Serv.*, No. 20-CV-1415, 2022 WL 445790, at *6 (S.D.N.Y. Feb. 14, 2022) (dismissing ADEA discrimination claim where the plaintiff "allege[d] no facts in support of an inference that he was discriminated against based on his age").

The plaintiff appears to have satisfied the first three elements. Nevertheless, the plaintiff has not alleged facts that give rise to an inference of discrimination on the basis of race or age. He alleges that the new managers did not give him a new badge or uniform and interfered with his supplies orders; but the only arguably discriminatory conduct he describes is that his "coworker (porter) who was African American was fired" and that the "new porters" "had a

6

problem with [his] salary and age." (ECF No. 2 at 8–9.) These allegations "are conclusory and insufficient, even giving the plaintiff the special solicitude that is due *pro se* litigants." *Freckleton v. Ambulnz NY LLC*, No. 21-CV-4615, 2022 WL 4644673, at *5 (E.D.N.Y. Sept. 30, 2022); *see also Delgado*, 485 F. Supp. 2d at 463; *Mansaray*, 2022 WL 445790, at *6.

    **b. Retaliation Claims**

To plead a Title VII or ADEA retaliation claim, a plaintiff must show "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn*, 795 F.3d at 316 (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)); *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006) ("The ADEA contains a nearly identical provision [to Title VII] prohibiting retaliation . . . and the same standards and burdens apply to claims under both statutes."). "As with . . . analysis of the disparate treatment claim, the allegations in the complaint need only give plausible support to the reduced prima facie requirements" for a Title VII or ADEA retaliation claim. *Littlejohn*, 795 F.3d at 316; *Ingrassia v. Health & Hosp. Corp.*, 130 F. Supp. 3d 709, 723 (E.D.N.Y. 2015).

Protected activities include "the filing of formal charges" and "informal protests of discriminatory employment practices." *Hoffman v. Williamsville Sch. Dist.*, 443 F. App'x 647, 650 (2d Cir. 2011) (citation omitted). In cases of informal complaints, the plaintiff's statements must be "sufficiently specific to make it clear that the employee is complaining about conduct prohibited by Title VII." *Risco v. McHugh*, 868 F. Supp. 2d 75, 110 (S.D.N.Y. 2012). Here, the plaintiff's testimony in the 2019 Garvin lawsuit is the only arguably protected activity. (ECF No. 2 at 8.) However, that testimony concerned only the events surrounding Garvin's slip and fall outside 316 Bergen, and had nothing to do with the plaintiff's race, age, or any concerns that the defendants engaged in conduct prohibited by Title VII or the ADEA.

7

Nor is there any causal connection between the plaintiff's testimony and his termination. "A plaintiff may establish causation either directly through a showing of retaliatory animus, or indirectly through a showing that the protected activity was followed closely by the adverse action." *Smith v. Cnty. of Suffolk*, 776 F.3d 114, 118 (2d Cir. 2015) (citing *Cobb v. Pozzi*, 363 F.3d 89, 108 (2d Cir. 2004)). A plaintiff can establish causation through temporal proximity "only if the time period between the protected activity and the adverse action is very close," and "[m]otions to dismiss have been granted when the temporal proximity exceeds one year." *Sosa v. New York City Dep't of Educ.*, 368 F. Supp. 3d 489, 519 (E.D.N.Y. 2019) (citation and internal quotations omitted) (collecting cases); *see also Bohnet v. Valley Stream Union Free Sch. Dist. 13*, 30 F. Supp. 3d 174, 182 (E.D.N.Y. 2014) (dismissing an ADEA retaliation claim where "the passage of approximately six months between plaintiff's complaint and the alleged adverse action does not allow for an inference of causation, especially where plaintiff has not alleged any other facts from which retaliation can be inferred"), *aff'd*, 594 F. App'x 53 (2d Cir. 2015). Here, the plaintiff does not allege any retaliatory animus, and he was fired about four years after his 2019 testimony. (*See* ECF No. 2 at 8–9.) Accordingly, the complaint fails to state a claim for retaliation under Title VII or the ADEA.

### c. Individual Defendants

It is well established that individuals are not liable under Title VII and the ADEA. *Littlejohn*, 795 F.3d at 313 ("Title VII does not create liability in individual supervisors and co-workers who are not the plaintiffs' actual employers." (citation and internal quotations omitted)); *Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010) ("[T]he remedial provisions of Title VII . . . do not provide for individual liability."); *Iwelu v. New York State Off. of Mental Health*, No. 22-3096-CV, 2024 WL 2175938, at *2 n.5 (2d Cir. May 15, 2024) ("To the extent that [the plaintiff] attempts to assert claims against the individual defendants under the ADEA or

8

ADA, such claims must also fail because there is no individual liability under either of those statutes."); *Peres v. Oceanside Union Free Sch. Dist.*, 426 F. Supp. 2d 15, 22 (E.D.N.Y. 2006) ("[T]he ADEA does not provide for individual liability."). For this reason, the plaintiff's claims against Stephen Benjamin and James Hart must be dismissed.

### d. Crown Royal, and Able Services

The claims against Crown Royal and Able Services must also be dismissed because the plaintiff does not sufficiently describe what they did. The complaint makes only one passing reference to these defendants, stating that there "are several companies involved, which are First Service Residential, Crown Royal, Able Services, Planned [Building Services] and . . . Dermot." (ECF No. 2 at 5.) This is not sufficient to state a claim. *See Jenkins v. Eaton*, No. 08-CV-713, 2009 WL 3873017, at *6 n.11 (E.D.N.Y. Nov. 18, 2009) (dismissing claims as to a specific defendant where "[t]he Complaint only mentions [that defendant] in a conclusory manner and the allegations are not sufficient to state a claim against her"); *Keita v. U.S. Small Bus. Admin.*, No. 07-CV-4958, 2010 WL 395980, at *5 (E.D.N.Y. Feb. 3, 2010) (dismissing claims as to a specific defendant because "[w]ithout some specification of factual detail, the complaint completely fails to state any plausible claim against [that defendant] under the *Iqbal* test"); *Lucien v. Williams*, No. 20-CV-8020, 2023 WL 2648215, at *5 (S.D.N.Y. Mar. 27, 2023) (dismissing claims where, "[b]eyond naming Defendants in the caption of his Complaint, Plaintiff has provided only conclusory allegations as to each of them").

### CONCLUSION

For the reasons set forth above, the defendants' motions are granted. Although the plaintiff did not respond to the defendants' motions, the Court grants him an opportunity to amend his complaint. An amended complaint completely replaces the original complaint, and the plaintiff must include in the amended complaint all the necessary information to support his

9

claims. The amended complaint must be captioned "Amended Complaint" and bear the same docket number as this Order (24-CV-4548 (AMD) (JRC)).

No summons will issue at this time, and all further proceedings are stayed for 30 days. If the plaintiff does not amend the complaint within 30 days or show good cause for an extension of time, judgment dismissing this action will be entered. The Clerk of Court is respectfully directed to mail a copy of this Order to the plaintiff.

**SO ORDERED.**

   s/Ann M. Donnelly   
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
      June 11, 2025